# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| SHAWN MICHAEL FORD, Individually and for Others Similarly Situated, <br><br> v. <br><br> CONOCOPHILLIPS COMPANY | Case No.  21-3099 <br><br> Jury Trial Demanded <br><br> FLSA Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Plaintiff Shawn Michael Ford (Ford) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant ConocoPhillips Company (ConocoPhillips).

2.      Ford and the other workers like him regularly worked for ConocoPhillips over 40 hours each week.

3.      But these workers never received overtime compensation.

4.      Instead of paying overtime as required by the FLSA, Ford and the other ConocoPhillips safety workers were paid a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7.      ConocoPhillips is headquartered in Houston, Texas, in this District and Division.

## THE PARTIES

8.      Ford performed work for ConocoPhillips as a Safety Consultant from approximately September 2018 until December 2019. Throughout his tenure, he was paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9.      Ford brings this action on behalf of himself and all other similarly situated workers paid by ConocoPhillips's day-rate system. Each of these safety consultants (also known as environment, health, and safety consultants) were paid a flat amount for each day worked for ConocoPhillips with no overtime for hours they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated workers consists of:

> **All safety consultants employed by or performing work on behalf of ConocoPhillips classified as independent contractors and paid a day-rate without overtime during the past three years** (the "Day Rate Workers").

10.      ConocoPhillips is a Texas corporation and may be served with process by serving its registered agent: United States Corporation Company, 211 E. 7th Street, Suite 620 Austin, TX 78701.

## COVERAGE UNDER THE FLSA

11.      For at least the past three years, ConocoPhillips has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12.      For at least the past three years, ConocoPhillips has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13.      For at least the past three years, ConocoPhillips has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

14.     For at least the past three years, Ford and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15.     ConocoPhillips treated Ford and all its safety consultants that it classified as independent contractors as employees and uniformly dictated the pay practices to which Ford and the Day Rate Workers were subjected.

16.     ConocoPhillips's classification of Ford as an independent contractor does not alter its status as an employer under the FLSA.

## FACTS

17.     ConocoPhillips is an oil and natural gas exploration and production company operating worldwide and throughout the United States. In order to provide services to many of its customers, ConocoPhillips contracts with certain companies to provide it with personnel to perform the necessary work.

18.     ConocoPhillips hires personnel to perform work which is an integral and indispensable part of its business objectives..

19.     Over the past three years, ConocoPhillips employed dozens of individuals – including Ford – as safety consultants or environment, health, and safety (EHS) workers in several states.

20.     These workers are subjected to the same or similar illegal pay practices for the same work. Specifically, the Day Rate Workers were paid a day-rate while performing safety work on behalf of ConocoPhillips, regardless of the number of hours that they worked that day (or in that workweek) without overtime pay.

21.     For example, Ford worked for ConocoPhillips starting in approximately September 2018 through December 2019 as a safety consultant in Karnes County, Texas.

22.     Throughout his tenure, he was paid on a day-rate basis.

23.     As a safety consultant, Ford's primary job duties required him to ensuring compliance with ConocoPhillips' safety and OSHA regulations..

24.     Ford regularly worked in excess of 40 hours each week while employed by ConocoPhillips.

25.     Ford typically worked more than 80 hours a week.

26.     The work Ford performed was an essential part of ConocoPhillips's core business.

27.     During Ford's employment with ConocoPhillips, he was classified as an independent contractor, however, ConocoPhillips exercised control over all aspects of his job.

28.     ConocoPhillips did not require any substantial investment by Ford for him to perform the safety work required of him.

29.     ConocoPhillips determined Ford's opportunity for profit and loss.

30.     Indeed, ConocoPhillips controlled all the significant or meaningful aspects of the job duties performed by Ford.

31.     ConocoPhillips dictated the hours and locations Ford worked, tools used, and rates of pay received.

32.     ConocoPhillips controlled all aspects of Ford's job activities by enforcing mandatory compliance with ConocoPhillips's policies and procedures.

33.     No real investment was required of Ford to perform his job.

34.     Ford worked on ConocoPhillips's job location, ConocoPhillips controlled the job site and the operations taking place.

35.     These workers ensure the safe production and work at ConocoPhillips.

36.     Ford did not provide the equipment he worked with on a daily basis.

4

37.     ConocoPhillips made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Ford worked.

38.     Ford did not incur operating expenses like rent, payroll, and marketing.

39.     Ford was economically dependent on ConocoPhillips during his employment.

40.     ConocoPhillips set Ford's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for ConocoPhillips.

41.     ConocoPhillips directly determined Ford's opportunity for profit and loss. Ford's earning opportunity was based on the number of days ConocoPhillips scheduled him to work.

42.     The daily and weekly activities of Ford and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by ConocoPhillips.

43.     Virtually every job function was pre-determined by ConocoPhillips, including the forms to use at a job site, the reports to compile, the schedule of work, and safety guidelines to follow.

44.     Ford and the Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters.

45.     Ford and the Day Rate Workers did not have any supervisory or management duties.

46.     For the purposes of an FLSA overtime claim, Ford and the Day Rate Workers performed substantially similar safety job duties related to servicing oil and gas operations on ConocoPhillips' sites.

47.     Ford  and the Day Rate Workers were not employed by ConocoPhillips on a project-by-project basis.

48.     In fact, while Ford was classified as an independent contractor, he was regularly on call for ConocoPhillips and was expected to drop everything and work whenever needed.

49.     The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for 2 or more weeks at a time.

50.     Instead of paying them overtime, ConocoPhillips paid Ford and the Day Rate Workers a day-rate. ConocoPhillips denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

51.     ConocoPhillips's policy of failing to pay its safety consultants misclassified as independent contractors, including Ford, overtime violates the FLSA because these workers are, for all purposes, employees.

52.     Ford and the Day Rate Workers were not guaranteed a salary under the FLSA. *See Hewitt v. Helix Energy Sols. Grp., Inc.,* No. 19-20023, 2021 WL 4099598, at *3 (5th Cir. Sept. 9, 2021).

53.     Since Ford and the Day Rate Workers were not guaranteed a salary, they were non-exempt employees who are owed unpaid overtime.

54.     Because Ford (and ConocoPhillips's other safety consultants) was misclassified as an independent contractor by ConocoPhillips, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

55.     Despite knowing the FLSA's requirements, ConocoPhillips failed to pay Ford and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

56.     Ford incorporates the preceding paragraphs by reference.

57.     As set forth herein, ConocoPhillips violated the FLSA by failing to pay Ford and the Day Rate Workers overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

58.     ConocoPhillips knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. ConocoPhillips's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

59.     Accordingly, Ford and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

60.     Ford incorporates all previous paragraphs and alleges that the illegal pay practices ConocoPhillips imposed on them were likewise imposed on the Day Rate Workers.

61.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

62.     Numerous other individuals who worked with Ford were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

63.     Based on his experiences and tenure with ConocoPhillips, Ford is aware that ConocoPhillips's illegal practices were imposed on the Day Rate Workers.

64.     ConocoPhillips used the Day Rate Workers across the United States.

65.     The Day Rate Workers were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

66.     ConocoPhillips is the true employer of Ford and the Day Rate Workers.

67.     ConocoPhillips's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

68. Ford's experiences are therefore typical of the experiences of the Day Rate Workers.

69. The specific job titles or precise job locations of the various Day Rate Workers do not prevent collective treatment.

70. Ford has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Ford has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

71. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

72. Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and ConocoPhillips will reap the unjust benefits of violating the FLSA.

73. Furthermore, even if some of the members of the class could afford individual litigation against ConocoPhillips, it would be unduly burdensome to the judicial system.

74. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Day Rate Workers and provide for judicial consistency.

75. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> (a)   Whether ConocoPhillips employed Ford and the Day Rate Workers within the meaning of the FLSA;
>
> (b)   Whether Ford and the Day Rate Workers were improperly misclassified as independent contractors;
>
> (c)   Whether ConocoPhillips's decision to classify Ford and the Day Rate Workers as independent contractors was made in good faith;
>
> (d)   Whether ConocoPhillips's decision to not pay time and a half for overtime to Ford and the Day Rate Workers was made in good faith;
>
> (e)   Whether ConocoPhillips's violations of the FLSA was willful; and

(f)     Whether ConocoPhillips's illegal pay practices were applied uniformly across the nation to all Day Rate Workers.

76.     Ford's claims are typical of the claims of the Day Rate Workers. Ford and the Day Rate Workers sustained damages arising out of ConocoPhillips's illegal and uniform employment policy.

77.     Ford knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

78.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

79.     Ford demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Ford pray for judgment against ConocoPhillips as follows:

(a)     For an order allowing this action to proceed as a FLSA collective action and directing notice to the Day Rate Workers;

(b)     For an order pursuant to section 16(b) of the FLSA finding ConocoPhillips liable for unpaid back wages, and an equal amount of liquidated damages, due to Ford and the Day Rate Workers;

(c)     For an order awarding Ford and the Day Rate Workers the costs of this action;

(d)     For an order awarding Ford and the Day Rate Workers their attorneys' fees;

(e)     For an order awarding Ford and the Day Rate Workers unpaid benefits and compensation in connection with the FLSA violations;

(f)     For an order awarding Ford and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(g)     For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson
    Michael A. Josephson
    Texas Bar No. 24014780
    Andrew W. Dunlap
    Texas Bar No. 24078444
    Richard M. Schreiber
    Texas Bar No. 24056278
    MJosephson@mybackwages.com
    ADunlap@mybackwages.com
    RSchreiber@mybackwages.com

**AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    RBurch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**